UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ERICA DARDEN, <br><br> PLAINTIFF, <br><br> V. <br><br> STARBUCKS CORPORATION, <br><br> DEFENDANT. | Civil Action No.: _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Erica Darden ("Plaintiff") respectfully submits the following Complaint:

## INTRODUCTION

1. Plaintiff is a former employee of Starbucks Corporation ("Defendant" or "Starbucks"). Plaintiff asserts claims of disability discrimination, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.* ("ADA").

2. Plaintiff seeks declaratory and injunctive relief, back pay and lost benefits, front pay, liquidated damages, compensatory damages, punitive damages, and attorneys' fees and costs of litigation to remedy these civil rights violations.

1

## JURISDICTION AND VENUE

3. Plaintiff's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a).

4. This Court is a proper venue for Plaintiff's claims under 28 U.S.C. § 1391(b) and (c), as a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## THE PARTIES

5. Plaintiff is a resident of Georgia and submits herself to the jurisdiction of this Court.

6. Defendant Starbucks is a foreign profit corporation licensed to conduct business in the State of Georgia.

7. At all times relevant to this action, Defendant conducted business, maintained facilities, and derived substantial revenue in the State of Georgia and is subject to the jurisdiction and venue of this Court.

8. Defendant may be served with process by serving a copy of the Complaint and Summons on its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

9. Defendant is an employer as defined by the ADA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Plaintiff has satisfied all administrative prerequisites to perfect her claims of disability discrimination, failure to accommodate, and retaliation under the ADA. Specifically, she timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

11. Plaintiff has now received the Notice of Right to Sue for his claims under the ADA within the last ninety (90) days.

## FACTUAL ALLEGATIONS

12. Starbucks is an American multinational chain of coffeehouses headquartered in Seattle, Washington.

13. Starbucks was founded in 1971 and is currently the world's largest coffeehouse chain.

14. Starbucks has over 35,000 stores in more than 80 countries.

15. Plaintiff had been employed by Starbucks on and off since 2014.

16. Most recently, Plaintiff began her employment with Starbucks in March 2023.

17. In June 2023, Plaintiff was promoted to Shift Supervisor based on her strong performance.

18. In August 2023, Plaintiff transferred to the Starbucks located at 708 Spring Street NW in Atlanta, Georgia. Plaintiff did not interview at the Starbucks located at 708 Spring Street NW prior to being transferred.

19. As a Shift Supervisor at 708 Spring Street NW, Plaintiff reported to Store Manager Nichole Jones. Ms. Jones reported to Susan Foster, District Manager. Ms. Foster reported to Attiya Armstrong, Regional Director.

20. Plaintiff is disabled. She has anxiety, depression and obsessive-compulsive disorder ("OCD"). Plaintiff does not drive due to her mental health conditions.

21. On October 16, 2023, Plaintiff sent Ms. Jones a text message asking if she could transfer to a café-only store because her mental health could no longer take a drive-through store (drive-through stores have much more volume and are more fast-paced and stressful).

22. Plaintiff told Ms. Jones that the drive-through store was too much for her mental health as she was consistently on the verge of a panic attack. **See Exhibit A.**

23. On or about October 18 or 19, 2023, Ms. Jones and Plaintiff reviewed the transfer request paperwork. Ms. Jones told Plaintiff that the transfer was approved and that she would transfer Plaintiff to the Starbucks at Colony Square as

the Store Manager at that location was looking for employees and it did not have a drive through.

24. On the transfer request form, Plaintiff disclosed that the reason for her transfer request was her mental health conditions.

25. Plaintiff's partner rearranged his job and made arrangements for them to move apartments to be close to the Colony Square Starbucks store based on Ms. Jones' representation that the transfer had been approved.

26. Plaintiff knew the Store Manager at Colony Square personally; prior to Plaintiff's transfer request, the Store Manager had reached out to ask if Plaintiff could pick up some shifts at the Colony Square store, which Plaintiff gladly did.

27. On October 23, 2023, Plaintiff sent Ms. Jones a text message asking Ms. Jones if that would be her last week at the 708 Spring Street NW store.

28. Ms. Jones responded, "Yes ma'am this will be the last week." **See Exhibit B.**

29. Later that day, Plaintiff went to meet with the Store Manager at Colony Square.

30. To Plaintiff's surprise, the meeting was an interview and not a meeting to discuss her transfer.

31. Plaintiff immediately spoke to Ms. Jones and asked her why she had been interviewed for the position if the transfer had already been approved.

32. Ms. Jones told Plaintiff she would speak to the Store Manager at Colony Square and get back to her.

33. Ms. Jones later told Plaintiff she had spoken to the Store Manager at Colony Square and the Store Manager had said that she did not need Plaintiff at the store.

34. Plaintiff was completely and utterly confused as this was contrary to what Ms. Jones had told her earlier—that the Colony Square location was in need of employees.

35. Plaintiff called the Store Manager at Colony Square to discuss her decision, but the Store Manager never returned Plaintiff's call.

36. Plaintiff felt completely hopeless given that she could no longer work at a drive-through store due to her mental health conditions and because she had relied on Starbucks' representations that her transfer was approved.

37. Plaintiff contacted everyone she knew in leadership to get her out of her current store given that Plaintiff could not handle a drive-through store, but her concerns fell on deaf ears.

38. For example, on October 23, 2023, Plaintiff contacted Karly Knuckles, Human Resources, and explained her situation including the fact that her request for a transfer based on her disabilities was denied. Ms. Knuckles was no help whatsoever.

39. Also on October 23, 2023, Plaintiff contacted her second-tier supervisor, Susan Foster, and explained to Ms. Foster that she had mental health conditions that did not allow her to work at her current store and that her request to transfer stores had been denied. **See Exhibit C.**

40. Plaintiff was hysterically crying on the phone.

41. Ms. Foster told Plaintiff that she would need to complete the ADA accommodation paperwork.

42. The accommodation paperwork was not due until November 10, 2023.

43. Also on October 23, 2023, Plaintiff contacted her third-tier supervisor, Attiya Armstrong.

44. Ms. Armstrong scheduled a time to speak with Plaintiff on October 25, 2023, but then cancelled the meeting at the last minute.

45. Ms. Armstrong—who clearly did not want to speak to Plaintiff—told Plaintiff to contact Karly Knuckles, Human Resources. Plaintiff told Ms. Armstrong that Ms. Knuckles was no help. **See Exhibit D.**

46. On October 26, 2023, Plaintiff sent Ms. Armstrong a text message stating that she has OCD and could not stop thinking about what had happened that week — specifically, that she and her partner had rearranged their whole lives on Starbucks' representation that she would be able to transfer to the Colony Square location and that the situation was affecting her mental health.  **See Exhibit E.**

47. Ms. Armstrong did not respond.

48. On October 26, 2023, Plaintiff sent Ms. Jones a text message asking if she could switch positions with someone from Colony Square who may want drive-through experience.

49. Ms. Jones did not respond to Plaintiff's text message.

50. On October 27, 2023, Plaintiff sent Ms. Armstrong a text message saying that she would keep going until someone heard her and to please help her as she was having suicide ideation.  **See Exhibit F.**

51. Ms. Armstrong did not respond to her text message.

52. On October 27, 2023, Plaintiff told Ms. Jones that she could not handle the drive-through store anymore and that she was having suicide ideation.

53. Ms. Jones did not respond to her text message that day.  **See Exhibit G.**

54. The next day—rather than try and accommodate Plaintiff's reasonable accommodation request—Ms. Jones gave Plaintiff information for Lyra benefits. **See Exhibit G.**

55. On November 1, 2023, Plaintiff was informed that she was terminated, but the reasons she was given were simply not true.

56. Specifically, Plaintiff was told that she abandoned her shift on October 24, 2023.

57. However, Plaintiff had told Ms. Jones both in person and by text messages that she needed to clock out for mental health reasons. Ms. Jones said she understood. **See Exhibit H.**

58. Plaintiff had never been given corrective action prior to her termination.

59. That same day, on November 1, 2023, Plaintiff texted Ms. Knuckles and told her that she should have never disclosed her disabilities because as soon as she did, she was terminated. **See Exhibit I.**

## COUNT I
**Disability Discrimination in Violation of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.***

60. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

61. At all times relevant hereto, Defendant has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADAAA.

62. At all times relevant hereto, Plaintiff is an individual with a disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)(A).

63. At all times relevant hereto, Plaintiff is an individual with a disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)(B) inasmuch as she has a record of an impairment as defined by the Act.

64. At all times relevant hereto, Plaintiff is an individual with a disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)(C) inasmuch as she was regarded as a person with an impairment as defined by the Act.

65. Defendant is, and at all times relevant to this litigation was, aware of Plaintiff's disability and history and record of disability.

66. Plaintiff is, and at all times relevant hereto was, a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8) and able to perform the essential function of his job.

67. Defendant discriminated against Plaintiff in violation of the ADA by taking adverse actions against her, including but not limited to, terminating Plaintiff's employment.

68. Defendant's actions amount to a violation of Section 102 of the ADAAA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

69. As a direct and proximate result of Defendant's intentional discrimination, the Plaintiff has suffered out-of-pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, in an amount to be established at trial.

70. In addition, Defendant's actions have caused, and continue to cause, the Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

71. Moreover, Defendant's actions have caused stress that has aggravated Plaintiff's medical condition and caused increased medical bills, in an amount to be established at trial.

## COUNT II
**Failure to Accommodate in Violation of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.***

72. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

73. Plaintiff requested a reasonable accommodation from Defendant. Specifically, Plaintiff requested the ability to transfer to a different Starbucks, one that did not have a drive through.

74. Defendant failed to accommodate Plaintiff's request and failed to engage in an interactive process with Plaintiff regarding her accommodation request.

75. Defendant's actions amount to a violation of the ADA which requires reasonable accommodations for disabilities.

76. The direct and proximate result of Defendant's actions has been to deprive the Plaintiff of income and benefits due to her.

77. The actions taken against the Plaintiff have caused her to suffer both monetary and non-monetary damages to be established at trial.

## COUNT III
**Retaliation in Violation of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.***

78. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

79. Plaintiff engaged in protected conduct by requesting ADA accommodations.

80. Defendant retaliated against Plaintiff for engaging in protected conduct in violation of the ADA by taking adverse actions against her, including but not limited to, terminating Plaintiff's employment.

81. Defendant's actions in retaliating against Plaintiff following her protected conduct were committed with reckless disregard for her right to be free from discriminatory treatment because of his opposition to discriminatory practices in violation of the ADA.

82. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, out of pocket expenses, attorney's fees and costs, humiliation, and other indignities.

83. Defendant undertook its actions intentionally and maliciously with respect to Plaintiff and her federally protected rights, and undertook its conduct recklessly with respect to Plaintiff and her federally protected rights, entitling her to recover compensatory and punitive damages.

**WHEREFORE,** Plaintiff demands a TRIAL BY JURY and the following relief:

(a) declare that Defendant has violated Plaintiff's rights under the federal statutes listed above;

(b) permanently enjoin Defendant from violating, in the future, Plaintiff's rights under the federal statutes listed above;

(c) award Plaintiff full back pay, including all lost pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(d) award Plaintiff prejudgment interest as required by law;

(e) award Plaintiff compensatory damages for emotional pain and suffering in an amount to be determined by the enlightened conscience of a jury;

(f) award Plaintiff front pay, including all lost future pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(g) award Plaintiff punitive damages, against Defendant sufficient to punish it for its unlawful conduct and deter it from repeating such conduct in the future, as determined by the enlightened conscience of a jury;

(h) award Plaintiff reasonable attorneys' fees and expenses; and

(i) grant such additional relief as may be just.

Respectfully submitted, this 28th day of May, 2024.

            *s/ Jackie Lee*
            Jackie Lee
            Georgia Bar No. 419196
            LEE MEIER LAW FIRM
            695 Pylant Street NE, Suite 105
            Atlanta, Georgia 30306
            Telephone: (404) 301-8973
            jlee@leemeier.law

            **COUNSEL FOR PLAINTIFF**